UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SETH E. DIZARD,
*Receiver of Ridgeway Trailer Company*,

        Plaintiff,

    v.                            Case No. 23-C-379

EIN CAP, INC.,

        Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a civil action arising under the Wisconsin receivership statute, Wis. Stat. § 128.07. Plaintiff Seth E. Dizard, Receiver of Ridgeway Trailer Company, alleges that Defendant EIN Cap, Inc., received preferential transfers of money from Ridgeway after the company became insolvent. Dizard asserts that EIN is required under Wis. Stat. § 128.07(2) to return the transfers for proportional distribution to Ridgeway's remaining creditors. The action was originally filed in the Circuit Court for Brown County, but EIN removed it to this court. Because the Receiver and EIN are citizens of different states and because more than $75,000 is in dispute, the court has jurisdiction under 28 U.S.C. § 1332. Presently before the court is EIN's motion for summary judgment. For the following reasons, EIN's motion will be granted.

### BACKGROUND

Ridgeway was a truck trailer leasing, sales, and repair company owned by Scott Berkowitz. Def.'s Resp. Pl.'s Statement of Facts (SOF), Dkt. No. 33 ¶¶ 1–2. EIN is a merchant cash advance (MCA) company that provides alternative financing to businesses. *Id.* ¶¶ 18–19. Specifically,

EIN purchases future accounts receivable from businesses at a discounted rate thereby providing businesses with immediate capital. *See* Pl.'s Resp. Def.'s SOF, Dkt. No. 42 ¶¶ 1–2. Between October 2018 and March 2020, Berkowitz, on behalf of Ridgeway, and EIN entered into eight separate MCA transactions:

| Date of Transaction | Capital Received by Ridgeway | Future Accounts Receivable due to EIN |
| --- | --- | --- |
| October 31, 2018 | $360,000 | $522,000 |
| February 12, 2019 | $250,000 | $352,500 |
| March 20, 2019 | $200,000 | $298,000 |
| May 20, 2019 | $490,000 | $730,100 |
| August 15, 2019 | $695,000 | $1,041,805 |
| November 27, 2019 | $300,000 | $417,000 |
| December 12, 2019 | $750,000 | $1,087,500 |
| March 9, 2020 | $895,000 | $1,320,125 |

Def.'s Resp. Pl.'s SOF ¶ 21. Each transaction was memorialized in a separate contract, but the substance of those contracts is not at issue in this case. *See* Decl. Aaron Aizenberg, Dkt. Nos. 34-1 to 34-8. Justin Taneo, EIN's primary underwriter on the Ridgeway account, noted that the eight transactions with Ridgeway were "on the larger side," and that eight rounds of funding was more than normal. Pl.'s Resp. Def.'s SOF ¶¶ 61, 64.

Nevertheless, Ridgeway usually made timely payments to EIN. *See* Def.'s Resp. Pl.'s SOF ¶ 52. While the parties dispute the total value of payments Ridgeway made to EIN over the course of the two companies' dealings, it is undisputed that Ridgeway paid EIN between $1,300,000 and $1,400,000 from December 14, 2019, and April 14, 2020. Pl.'s Resp. Def.'s SOF ¶ 4. Payments from Ridgeway, however, ultimately stopped after Berkowitz' death on April 2, 2020, with

Ridgeway paying EIN for the last time on April 1, 2020. Def.'s Resp. Pl.'s SOF ¶¶ 2, 22, 54. Though not part of the record in this case, it appears from prior litigation involving Ridgeway that Berkowitz or Berkovitz, as he was identified in the earlier litigation, took his own life when the check-kiting scheme which he implemented to hide his fraudulent business transactions came to light. *See BMO Harris, N.A., v. Berkovitz*, No. 20-CV-546, Decision on Mot. for Summ. J., Dkt. No. 173 (E.D. Wis. Mar. 21, 2023).

In any event, on April 14, 2020, Ridgeway made a voluntary assignment for the benefit of creditors under Wis. Stat. § 128.02, and Dizard was appointed as receiver. Pl.'s Resp. Def.'s SOF ¶ 3. Laxson Boyd was also engaged as a consultant to serve in a managerial capacity and market Ridgeway for sale. *Id.* ¶ 4. Mr. Boyd took over day-to-day operation of Ridgeway and stabilized the business as a going concern until October 29, 2020, when the receivership court authorized the sale of substantially all of Ridgeway's assets on an "as is, where is" basis. *Id.* ¶¶ 9–11, 17. The receivership sale was the product of a process in which Mr. Boyd prepared due diligence and marketed Ridgeway to prospective buyers. Pl.'s Resp. Def.'s SOF ¶¶ 20–22. Prior to a public auction of the company, a stalking horse bid was negotiated and set at $2,070,000. *Id.* ¶¶ 23–24. At auction, Mr. Boyd fielded telephone bids from three competing bidders, and North Central Utility of Wisconsin, LLC ultimately prevailed at a sale price of $2,400,000. *Id.* ¶¶ 26–29.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is

3

such that a reasonable jury could return a verdict for the non-moving party." *Id.* In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The non-moving party must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). It is not enough for the nonmovant to "show that there is some metaphysical doubt as to the material facts," they "must do more." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

At summary judgment, "the court may consider any evidence that would be admissible at trial." *Stinnett v. Iron Works Gym/Exec. Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002) (citing *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir.2001)). "The evidence need not be admissible in form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016) (citing *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267–68 (7th Cir. 1994)). It is for this reason that summary judgment is referred to in federal courts as the "put up or shut up moment in a lawsuit." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted).

## ANALYSIS

Wis. Stat. § 128.07(2) authorizes a receiver appointed under Chapter 128 to recover a preference given to a debtor within four months before the filing of a petition, or an assignment for the benefit of creditors, if "the recipient has reasonable cause to believe that the enforcement of the judgment or transfer would effect a preference . . . ." The statute provides that "[a] person shall be considered to have given a preference if, being insolvent, the person has made a transfer of any of his or her property, or has procured or permitted a judgment to be entered against him or her in favor of any other person, and the effect of the transfer or the enforcement of the judgment will be to enable any creditor to obtain a greater percentage of his or her debt than any other creditor of the same class." Wis. Stat. § 128.07(1).

To prevail on his claim of preference, then, the Receiver must show that after December 14, 2019, (1) Ridgeway made a monetary transfer or transfers to EIN, (2) Ridgeway was insolvent at the time of the transfer or transfers, and (3) EIN had reasonable cause to believe that the effect of the transfer or transfers would be to allow EIN to obtain a greater percentage of its debt as compared to other Ridgeway creditors of the same class. *Matter of Liberty Milk Mktg. Coop.*, 2019 WI App 55, ¶ 26, 389 Wis. 2d 35, 934 N.W.2d 913. The Receiver bears the burden of proving these elements. *See Est. of Boyle v. McGalloway*, 223 Wis. 39, 41, 269 N.W. 533 (1936).

The transfers in question here are those that occurred between December 14, 2019, and April 14, 2020 (a four-month window known as the "preference period"), which the parties agree totaled roughly $1,300,000. The parties do not dispute that the transfers occurred, nor that the transfers allowed EIN to obtain payment of a greater percentage of its debt compared to other similarly situated creditors. EIN argues that it is entitled to summary judgment because the Receiver has no admissible evidence (1) that Ridgeway was insolvent during the preference period

5

or (2) that EIN had reasonable cause to believe that each of the transfers in question would affect preferences. The court will address each in turn.

## A. Insolvency

It is important to note that Chapter 128 "was enacted in 1937 and in a large measure was copied from or based upon the National Bankruptcy Act as it then read or as it was originally created in 1893." *In re Bossell, Van Vechten & Chapman*, 30 Wis. 2d 20, 26, 139 N.W.2d 639 (1966). Conspicuously absent from Chapter 128 is any presumption of insolvency running backwards from the date of filing of the receivership petition. *Cf.* 11 U.S.C. § 547(f) ("For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition."). Thus, Ridgeway's insolvency during the preference period is an essential element of the receiver's claim.

Under Chapter 128, a person is insolvent when the aggregate value of their property, at a fair valuation, is insufficient in amount to pay the person's debts. Wis. Stat. § 128.001(1)(a). "Insolvency, in its relation to preferences, . . . simply means that the assets of the alleged insolvent are insufficient, at a fair valuation, to pay his debts." *Schmitz v. Wisconsin Soap Mfg. Co.*, 204 Wis. 149, 235 N.W. 409, 410 (1931). A person is also deemed insolvent when that "person makes an assignment for the benefit of creditors." Wis. Stat. § 128.001(1)(c). The question here is whether Ridgeway was insolvent during the four months prior to its assignment for the benefit of creditors on April 14, 2020.

EIN does not present evidence that Ridgeway was in fact solvent; instead, EIN contends that the Receiver has failed to offer competent evidence from which a reasonable jury could find that Ridgeway was insolvent during the preference period. EIN's argument properly reflects federal summary judgment procedure. Because the Receiver has the burden of proof, it is his

responsibility to establish that admissible evidence exists sufficient to meet his burden. EIN is not required to negate such evidence in order to prevail on summary judgment. *See Celotex*, 477 U.S. at 322 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

The Receiver relies primarily on his own declaration and that of Mr. Boyd in support of his contention that Ridgeway was insolvent from December 14, 2019, to April 14, 2020. Pl.'s SOF, Dkt. No. 32 ¶ 5. Both offer the opinion that based upon their review of Ridgeway's current and historical financial information, and their own knowledge and experience, Ridgeway was insolvent during the four-month period preceding its assignment for the benefit of creditors. Boyd Decl., Dkt. No. 35 ¶¶ 3–6; Dizard Decl., Dkt. No. 36 ¶ 5. But opinion evidence, whether offered by expert witnesses or lay witnesses, is only admissible under limited circumstances. *See* Fed. R. Evid. 701, 702. The opinion testimony offered by the Receiver is inadmissible under these Rules.

As to Rule 702, the Receiver failed to disclose either himself or Mr. Boyd as expert witnesses, nor did either provide written reports as required by Rule 26(a)(2) of the Federal Rules of Civil Procedure. Disclosure of expert testimony is a prerequisite to offering such evidence at trial. Fed. R. Civ. P. 26(a)(2)(A). "This is a strict but well-founded requirement: 'Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial.'" *Tribble v. Evangelides*, 670 F.3d 753, 759 (7th Cir. 2012) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir.2004)). "Without proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report." *Id.* at 759–60. For this reason, the sanction for failure to disclose an expert

witness is severe.  Under Rule 37(c)(1) "exclusion of non-disclosed evidence is automatic and mandatory . . . unless non-disclosure was justified or harmless." *Musser*, 356 F.3d at 758.

Absent expert testimony, the Receiver is unable to meet his burden.  Insolvency is a question of fact.  A business is insolvent if the fair market price of its total assets is less than its liabilities.  *Covey v. Commercial Nat'l Bank of Peoria*, 960 F.2d 657, 660 (7th Cir. 1992).  "The valuation of assets and liabilities for the purpose of performing this analysis should be determined by expert testimony or recent appraisals." *In re World Mktg Chi., LLC*, 574 B.R. 670, 679 (Bkrtcy. N.D. Ill. 2017).  The Receiver offers neither.

Nor are the opinions offered by the Receiver and Mr. Boyd admissible as lay witness testimony under Rule 701 of the Federal Rules of Evidence.  Rule 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The opinion that Ridgeway was insolvent during the four-month period prior to the filing of the receivership is based on the technical or other specialized knowledge of an accountant or one trained in the valuation of businesses.  It is therefore inadmissible under Rule 701.

It may well be that the Receiver or Mr. Boyd have such specialized knowledge, training, and experience.  But having failed to disclose either one as an expert witness under Rule 26(a)(2), the Receiver may not offer that opinion testimony at trial.  And if it is inadmissible at trial, the court cannot consider it in deciding a motion for summary judgment.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

The Receiver also relies upon what it contends are Ridgeway Balance Sheets for the months covering the period from October 2019 through April 2020. Boyd Decl. ¶ 9, Ex. A, Dkt. No. 35-1. But as EIN points out, the Balance Sheets are hearsay within the meaning of Federal Rule of Evidence 801(c), and the Receiver has failed to provide a foundation for their admission under any of the exceptions to the rule against hearsay. Fed. R. Evid. 802, 803. Mr. Boyd states in his declaration that the Balance Sheets are "true and correct copies of Ridgeway's monthly balance sheets covering the time period October 31, 2019, through April 30, 2020," but he was not involved with Ridgeway until April 2020 and fails to provide the information required for the documents to be admissible as "records of regularly conducted activity." Fed. R. Evid. 803(6). The same is true of the summary analysis of Ridgeway's Merchant Cash Advance history from January 2017 to April 2020. Boyd Decl., Ex. B, Dkt. No. 35-2. While these documents and Mr. Boyd's explanation of them would likely be admissible as expert testimony, no expert witness was disclosed by the Receiver. Absent such an expert, the evidence is not admissible.

Finally, the Receiver points to the $2.4 million purchase price for the assets of Ridgeway in October 2020, some six months after the receivership was filed. The fact that the purchase price was "less than 25% of Ridgeway's vastly understated $10+ million in liabilities," the Receiver argues, proves it was insolvent during the preference period. Pl.'s Br. in Opp., Dkt. No. 31 at 9. Elsewhere in his brief, the Receiver states that after the sale, "there remained approximately $37 million in unpaid debts owed to approximately 50 creditors." *Id.* at 10. If true, these facts would seem to be enough to raise an inference that Ridgeway was insolvent during the preference period. But, again, the Receiver offers no foundation for the business records on which he and Mr. Boyd

purportedly rely. Absent admissible business records and the expert analysis of an accountant or a financial analyst, the mere fact that Ridgeway's liabilities exceeded the fair market value of its assets in late October 2020 is not evidence of whether it was insolvent six to ten months earlier. The Receiver offers neither here.

## B. Reasonable Cause To Believe Ridgeway Was Insolvent

To recover a preferential transfer under Wis. Stat. § 128.07, a receiver must establish not only that the debtor was insolvent at the time of the transfer, but also that at the time of the transfer, the recipient had reasonable cause to believe that the transfer would effect a preference, that it would result in the transferee obtaining a greater percentage of his or her debt than any other creditor of the same class. Proof of "such reasonable cause 'may be established by proof of knowledge of such facts as would lead an ordinarily prudent business [person] to believe the transfer would effect a preference.'" *Liberty Milk Mktg*, 389 Wis. 2d at 56 (quoting *Goetz v. Zeif*, 181 Wis. 628, 639, 195 N.W. 874 (1923)).

> Facts relevant to such a determination can include: (1) the relation of the parties; (2) their intimacy or lack of it; (3) the usual or unusual nature of the transfer; (4) the opportunities of the creditor for knowledge; (5) the participation of the creditor, if any, in the debtor's business; and (6) the credibility and forthrightness of the witnesses as to the disclosure of relevant facts within their knowledge.

*Id.* at 56–57. Again, the Receiver's effort is severely hampered by his failure to name "an ordinarily prudent business person" as an expert and offer the opinions of such an expert as evidence.

The Receiver argues, for example, that EIN's contracts with Ridgeway gave it "broad authority to demand and inspect virtually any financial or banking record related to Ridgeway." Pl.'s Br. in Opp. at 15. The receiver suggests that EIN should have conducted an audit of Ridgeway's business as a condition of entering into the various contracts. But whether an MCA

in EIN's position would be reasonably expected to conduct a more thorough review of Ridgeway's records before entering into the various transactions with it is not a question that a lay person can answer. To be sure, the Receiver offers numerous criticisms of the approval process for the transactions between Ridgeway and EIN. But the Receiver and Mr. Boyd are at most fact witnesses, not experts. Having failed to disclose any expert, the Receiver is precluded from now offering expert opinions as evidence to support the essential elements of his claim against EIN.

EIN argues that its history with Ridgeway led it to believe that it was a going concern. Ridgeway first approached EIN in October 2018. After its initial funding, EIN made seven additional advances to Ridgeway over the next 18 months. From the first to the last advance in March 2020, Ridgeway never missed or failed to make a timely payment. Def.'s SOF, Dkt. No. 27 ¶ 52. It wasn't until March of 2020, less than a month before the receivership was filed, that Ridgeway missed a payment when due. When EIN reached out to Berkowitz, he told EIN he would take care of it, and he did. *Id.* ¶ 53. It was only after Berkowitz' death that EIN no longer received payments. The fact that EIN entered into another transaction as late as March 9, 2020, where it advanced $895,000 to Ridgeway, is wholly inconsistent with the Receiver's contention that EIN knew that Ridgeway was insolvent and that the payments it was receiving from Ridgeway constituted preferences.

In the face of these undisputed facts, the Receiver offers nothing more than undisclosed expert opinion. But because no expert was disclosed by the Receiver, the offered opinions are not admissible and cannot be considered in deciding EIN's motion for summary judgment. It follows that EIN's motion must be granted. The Receiver has failed to put forth evidence from which a reasonable jury could find in his favor.

11

## CONCLUSION

For the reasons above, the Receiver has failed to put forth admissible evidence from which a jury could find in his favor.  Accordingly, his claim under Wis. Stat. § 128.07 must fail.

**IT IS THEREFORE ORDERED** that Defendant EIN Cap, Inc.'s motion for summary judgment (Dkt. No. 25) is **GRANTED**, and the claim against it is dismissed.  The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 27th day of December, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

12